DAVID H. KRAMER, SBN 168452
MENG JIA YANG, SBN 311859
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
Email: mjyang@wsgr.com

LAUREN GALLO WHITE, SBN 309075
AMIT Q. GRESSEL, SBN 307663
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (415) 947-2099
Email: lwhite@wsgr.com
Email: agressel@wsgr.com

BRIAN M. WILLEN (*admitted pro hac*)
BENJAMIN D. MARGO (*admitted pro hac*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com
Email: bmargo@wsgr.com

STEFFEN N. JOHNSON (*admitted pro hac*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, DC 20006-3817
Telephone: (202) 973-8800
Facsimile: (202) 973-8899
Email: sjohnson@wsgr.com

Attorneys for Defendants
YOUTUBE, LLC and SUNDAR PICHAI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DONALD J. TRUMP, KELLY VICTORY, AUSTEN FLETCHER, AMERICAN CONSERVATIVE UNION, ANDREW BAGGIANI, MARYSE VERONICA JEAN-LOUIS, NAOMI WOLF, and FRANK VALENTINE,<br><br>    Plaintiffs,<br><br>        v.<br><br>YOUTUBE, LLC and SUNDAR PICHAI,<br><br>    Defendants. | CASE NO.: 4:21-cv-08009-JSW<br><br>**DEFENDANTS YOUTUBEC LLC AND SUNDAR PICHAI'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hon. Jeffrey S. White |

# TABLE OF CONTENTS

**Page**

ARGUMENT .................................................................................................................1

I.      PLAINTIFFS CANNOT SAVE THEIR FIRST AMENDMENT CLAIM ........................1

    A.      Plaintiffs Have Not Plausibly Alleged Government Coercion...................................2

    B.      Plaintiffs Have Not Plausibly Alleged Joint Action...................................................7

    C.      Section 230 Does Not Turn YouTube Into A State Actor ........................................9

II.     PLAINTIFFS CANNOT SAVE THEIR DECLARATORY JUDGMENT CLAIM..........11

III.    PLAINTIFFS CANNOT SAVE THEIR FDUTPA CLAIM .............................................12

    A.      Plaintiffs Cannot Overcome The Choice-of-Law Provision ...................................12

    B.      Plaintiffs Have No Viable FDUTPA Claim .............................................................13

IV.     PLAINTIFFS CANNOT SAVE THEIR SSMCA CLAIM .................................................15

    A.      Plaintiffs Lack Standing To Sue Based On Alleged Harm To Others ....................15

    B.      The SSMCA Is Unconstitutional...............................................................................16

V.      SECTION 230 BARS PLAINTIFFS' STATE LAW CLAIMS .........................................19

VI.     PLAINTIFFS CANNOT SAVE THEIR CLAIMS AGAINST MR. PICHAI...................20

CONCLUSION .........................................................................................................................20

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Abu-Jamal v. Nat'l Pub. Radio,*
    1997 U.S. Dist. LEXIS 13604 (D.D.C. Aug. 21, 1997)......................................... 3

5

*Adickes v. S. H. Kress & Co.,*
6    398 U.S. 144 (1970) ......................................................................................... 8

7

*Am. Fam. Ass'n, Inc. v. City & Cnty. of S.F.,*
    277 F.3d 1114 (9th Cir. 2002)........................................................................... 6

8

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
9    526 U.S. 40 (1999)...................................................................................... 9, 10

10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................... 1, 2

11

*Associated Gen. Contractors v. S.F. Unified Sch. Dist.,*
12    616 F.2d 1381 (9th Cir. 1980) ......................................................................... 10

13

*Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff,*
    2022 U.S. App. LEXIS 2150 (D.C. Cir. Jan. 25, 2022)................................... 7, 15

14

*Atkinson v. Meta Platforms, Inc.,*
15    2021 U.S. App. LEXIS 34632 (9th Cir. Nov. 22, 2021)................................... 1, 9

16

*Bantam Books, Inc. v. Sullivan,*
    372 U.S. 58 (1963) ........................................................................................ 3, 4

17

*Bennett v. Hendrix,*
18    423 F.3d 1247 (11th Cir. 2005) .......................................................................... 4

19

*Blum v. Yaretsky,*
    457 U.S. 991 (1982) ...................................................................................... 5, 6

20

*Buentello v. Boebert,*
21    2021 U.S. Dist. LEXIS 117825 (D. Colo. June 24, 2021) ............................... 2, 3

22

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.,*
    169 So. 3d 164 (Fla. Dist. Ct. App. 2015)........................................................ 14

23

*Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.,*
24    827 F.2d 1291 (9th Cir. 1987).......................................................................... 3, 6

25

*Children's Health Def. v. Facebook Inc.,*
    2021 U.S. Dist. LEXIS 121314 (N.D. Cal. June 29, 2021) ...................... *passim*

26

*City of N.Y. v. Beretta USA Corp.,*
27    524 F.3d 384 (2d Cir. 2008)............................................................................ 11

28

*Collins v. Womancare,*
    878 F.2d 1145 (9th Cir. 1989).......................................................................... 8

*Cross v. Facebook, Inc.*,
    14 Cal. App. 5th 190 (2017)..................................................................................... 20

*Daniels v. Alphabet Inc.*,
    2021 U.S. Dist. LEXIS 64385 (N.D. Cal. Mar. 31, 2021) ............................................ 2, 5

*Denver Area Educ. Telecomms. Consortium, Inc. v. F.C.C.*,
    518 U.S. 727 (1996) ..................................................................................................... 18

*Dietrich v. John Ascuaga's Nugget*,
    548 F.3d 892 (9th Cir. 2008)......................................................................................... 8

*Divino Grp. LLC v. Google LLC*,
    2021 U.S. Dist. LEXIS 3245 (N.D. Cal. Jan. 6, 2021) ................................................ 9, 11

*DJ Lincoln Enters., Inc. v. Google LLC*,
    2022 U.S. App. LEXIS 2051 (11th Cir. Jan. 24, 2022) ................................................. 14

*Doe v. Google LLC*,
    2021 U.S. Dist. LEXIS 201377 (N.D. Cal. Oct. 19, 2021) ........................................... 5, 8

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ..................................................................................................... 18

*FCC v. Midwest Video Corp.*,
    440 U.S. 689 (1979) ..................................................................................................... 18

*Fonda v. Gray*,
    707 F.2d 435 (9th Cir. 1983)......................................................................................... 7

*Gaby's Bags, LLC v. Mercari, Inc.*,
    2020 U.S. Dist. LEXIS 57440 (N.D. Cal. Mar. 31, 2020) ............................................ 12

*Hammerhead Enters., Inc. v. Brezenoff*,
    707 F.2d 33 (2d Cir. 1983)............................................................................................ 4

*Heineke v. Santa Clara Univ.*,
    965 F.3d 1009 (9th Cir. 2020)............................................................................ 1, 4, 5, 6

*Ileto v. Glock, Inc.*,
    565 F.3d 1126 (9th Cir. 2009)....................................................................................... 11

*In re Facebook Biometric Info. Privacy Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ........................................................................ 12

*In re Nexus 6P Prods. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) .......................................................................... 12

*In re NJOY, Inc. Consumer Class Action Litig.*,
    2015 WL 12732461 (C.D. Cal. May 27, 2015)................................................................. 14

*Informed Consent Action Network v. YouTube, LLC*,
    2022 U.S. Dist. LEXIS 18377 (N.D. Cal. Jan. 31, 2022) ....................................... *passim*

*Iowa-Des Moines Nat'l Bank v. Bennett*,
    284 U.S. 239 (1931) ..................................................................................................... 3, 4

*Johnson v. Knowles*,
    113 F.3d 1114 (9th Cir. 1997) .................................................................... 2

*KC Leisure, Inc. v. Haber*,
    972 So. 2d 1069 (Fla. Dist. Ct. App. 2008) .......................................... 20

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................. 14

*Lavigne v. Herbalife, Ltd.*,
    2019 WL 6721619 (C.D. Cal. Oct. 22, 2019) ...................................... 13

*Lewis v. Google LLC*,
    461 F. Supp. 3d 938 (N.D. Cal. 2020),
    *aff'd*, 851 F. App'x 723 (9th Cir. 2021) ...................................... 11, 12

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982) ...................................................................................... 11

*Lombard v. Louisiana*,
    373 U.S. 267 (1963) ................................................................................... 3, 5

*Manhattan Cmty. Access Corp. v. Halleck*,
    139 S. Ct. 1921 (2019) ......................................................................... 1, 6, 9

*Mathis v. Pac. Gas & Elec. Co.*,
    75 F.3d 498 (9th Cir. 1996) ................................................................ 6, 7, 8

*Mathis v. Pac. Gas & Elec. Co.*,
    891 F.2d 1429 (9th Cir. 1989) ................................................................ 6, 9

*Mendocino Env't Ctr. v. Mendocino Cnty.*,
    192 F.3d 1283 (9th Cir. 1999) .................................................................... 8

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974) .............................................................................. 17, 18

*Moss v. United States Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ...................................................................... 1

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021) ..................................................................... 20

*Naffe v. Frey*,
    789 F.3d 1030 (9th Cir. 2015) .................................................................... 1

*Nat'l Inst. of Family & Life Advocs. v. Becerra*,
    138 S. Ct. 2361 (2018) ............................................................................... 17

*NetChoice, LLC v. Moody*,
    2021 U.S. Dist. LEXIS 121951 (N.D. Fla. June 30, 2021) ............... 16, 17, 18, 19

*NetChoice, LLC v. Paxton*,
    2021 U.S. Dist. LEXIS 233460 (W.D. Tex. Dec. 1, 2021) .......................... 17, 18

*Newman v. Google LLC,*
    2021 U.S. Dist. LEXIS 119101 (N.D. Cal. June 25, 2021) ................................... 9, 10, 15

*O'Handley v. Padilla,*
    2022 U.S. Dist. LEXIS 4491 (N.D. Cal. Jan. 10, 2022) ............................................*passim*

*Palomino v. Facebook, Inc.,*
    2017 U.S. Dist. LEXIS 2971 (N.D. Cal. Jan. 9, 2017) .................................................... 13

*Pasadena Republican Club v. W. Justice Ctr.,*
    985 F.3d 1161 (9th Cir. 2021)........................................................................................... 7

*Peterson v. City of Greenville,*
    373 U.S. 244 (1963) ......................................................................................................... 5

*Piescik v. CVS Pharmacy, Inc.,*
    2021 U.S. Dist. LEXIS 239982 (S.D. Fla. Dec. 15, 2021) ............................................. 15

*Prager Univ. v. Google LLC,*
    951 F.3d 991 (9th Cir. 2020)............................................................................................ 9

*PruneYard Shopping Ctr. v. Robins,*
    447 U.S. 74 (1980) ......................................................................................................... 17

*Reitman v. Mulkey,*
    387 U.S. 369 (1967) ................................................................................................... 9, 10

*Roberts v. AT&T Mobility LLC,*
    877 F.3d 833 (9th Cir. 2017)................................................................................. 9, 10, 11

*Robinson v. Florida,*
    378 U.S. 153 (1964) ......................................................................................................... 5

*Rojas-Lozano v. Google, Inc.,*
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ......................................................................... 13

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,*
    547 U.S. 47 (2006) ......................................................................................................... 17

*Sam Francis Found. v. Christies, Inc.,*
    784 F.3d 1320 (9th Cir. 2015) (en banc)......................................................................... 19

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ....................................................................................................... 16

*State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.,*
    446 F. Supp. 3d 1032 (S.D. Fla. 2020)........................................................................... 20

*State v. J.P.,*
    907 So. 2d 1101 (Fla. 2004)............................................................................................ 16

*Sutton v. Providence St. Joseph Med. Ctr.,*
    192 F.3d 826 (9th Cir. 1999)............................................................................................ 6

*Terry v. Adams,*
    345 U.S. 461 (1953) ......................................................................................................... 3

*TransPetrol, Ltd. v. Radulovic,*
    764 So. 2d 878 ............................................................................................................ 14

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) .............................................................................................. 16

*Tsao v. Desert Palace, Inc.,*
    698 F.3d 1128 (9th Cir. 2012) ................................................................................. 7, 8

*Tulsi Now, Inc. v. Google, LLC,*
    2020 U.S. Dist. LEXIS 41673 (C.D. Cal. Mar. 3, 2020) ............................................. 3

*U.S. Telecom Ass'n v. FCC,*
    855 F.3d 381 (D.C. Cir. 2017) ................................................................................. 18

*United States v. Classic,*
    313 U.S. 299 (1941) .................................................................................................... 3

*United States v. Ross,*
    32 F.3d 1411 (9th Cir. 1994) ...................................................................................... 6

*Virgilio v. Ryland Grp., Inc.,*
    680 F.3d 1329 (11th Cir. 2012) ................................................................................ 14

*Williams v. Facebook, Inc.,*
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) ................................................................ 12, 13

*Zauderer v. Office of Disciplinary Counsel of the Sup. Ct. of Ohio,*
    471 U.S. 626 (1985) .................................................................................................. 17

*Zhou v. Breed,*
    2022 U.S. App. LEXIS 1119 (9th Cir. Jan. 14, 2022) ................................................. 6

*Zieper v. Metzinger,*
    474 F.3d 60 (2d Cir. 2007) .......................................................................................... 4

**STATUTES & RULES**

47 U.S.C. § 230 ...............................................................................................*passim*

Cal. Bus. & Prof. Code § 17204.............................................................................. 12, 13

Fed. R. Civ. P. 1 ...................................................................................................... 1

Fed. R. Civ. P. 8 .................................................................................................... 1, 2

Fed. R. Civ. P. 9(b) ............................................................................................... 13, 14

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1

Plaintiffs' Opposition argues that "threats" from certain Members of Congress somehow "coerced" YouTube into violating the First Amendment rights of the President of the United States. That fanciful theory misunderstands bedrock constitutional principles articulated by the Supreme Court, the Ninth Circuit, and an unbroken series of recent cases in this District. With rare exceptions, the Constitution binds state actors—not private parties. Individual legislators' public statements do not change that: those statements lack force of law, and in any event the statements at issue here made no concrete threats against YouTube. Nor do Plaintiffs offer any other remotely plausible basis for transforming YouTube's private editorial choices into governmental action. In short, Plaintiffs' approach does exactly what the Supreme Court has warned against: "Expanding the state-action doctrine beyond its traditional boundaries would expand governmental control while restricting individual liberty and private enterprise." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1934 (2019). Beyond that, Plaintiffs offer no serious defense of their other claims, including claims under Florida law that are barred by the parties' agreement and the U.S. Constitution, and that are not cognizable even on their own terms. This case should be dismissed with prejudice.

**<u>ARGUMENT</u>**

## I.       PLAINTIFFS CANNOT SAVE THEIR FIRST AMENDMENT CLAIM

Hoping to overcome "the presumption that [YouTube's] private conduct does not constitute governmental action," *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020), Plaintiffs argue that even implausible allegations can survive a motion to dismiss and that state action determinations are "ill-suited to a Rule 12(b)(6) motion." Opp. 6-7 & n. 7. But under binding precedent, the Rule 8 plausibility standard applies to "all civil actions." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting Fed. R. Civ. P. 1); *accord Moss v. United States Secret Serv.*, 572 F.3d 962, 969 n.7 (9th Cir. 2009). And both the Ninth Circuit and courts in this District have consistently applied that standard to dismiss conclusory or implausible state action allegations, including in cases just like this one. *See, e.g.*, *Naffe v. Frey*, 789 F.3d 1030, 1035-36 (9th Cir. 2015); *Atkinson v. Meta Platforms, Inc*., 2021 U.S. App. LEXIS 34632 (9th Cir. Nov. 22, 2021); *Informed Consent Action Network v. YouTube, LLC*, 2022 U.S. Dist. LEXIS 18377 (N.D. Cal. Jan. 31, 2022) ("*ICAN*"); *O'Handley v. Padilla*, 2022 U.S. Dist. LEXIS 4491, at *17-18, 24, 27 n.13 (N.D. Cal. Jan. 10, 2022);

*Children's Health Def. v. Facebook Inc.*, 2021 U.S. Dist. LEXIS 121314, at *30-46 (N.D. Cal. June 29, 2021) ("*CHD*"). In the state action context, as in all others, Rule 8 does "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### A.     Plaintiffs Have Not Plausibly Alleged Government Coercion

Disclaiming any suggestion that YouTube is a "public forum" or engaged in a "public function" (Opp. 7), Plaintiffs rely principally on a "government coercion" theory of state action. Opp. 7-18. But the allegations here look nothing like true coercion, which as an initial matter requires a "regulation or custom having the force of law." *Johnson v. Knowles*, 113 F.3d 1114, 1120 (9th Cir. 1997); MTD 8-13. In every coercion case Plaintiffs rely on, there were threats of criminal or other tangible legal consequences from an Executive official with authority to carry out that threat. Here, however, Plaintiffs rely on public statements of members of Congress, which were not even specifically targeted at YouTube. AC ¶¶ 63-71. Plaintiffs attempt to bolster these allegations by submitting additional congressional transcripts, mostly recorded *after* YouTube acted. *See* Request for Judicial Notice (Dkt. 141-1). But even assuming these new statements are properly before the Court, they (like those actually pleaded) fall far short of unlawful coercion needed to transform YouTube's private editorial choices into the state action.[1]

***Public Statements By Individual Legislators Do Not Create State Action.*** Plaintiffs fail to confront the most fundamental problem with their coercion theory: public statements by individual legislators are not themselves state action and lack the legal force necessary to transform private conduct into a First Amendment violation. MTD 8-11 (discussing *Buentello v. Boebert*, 2021 U.S. Dist. LEXIS 117825, at *13 (D. Colo. June 24, 2021), *Daniels v. Alphabet Inc.*, 2021 U.S. Dist.

---

[1] Viewing the new statements in context (rather than in isolation) further undermines Plaintiffs' compulsion theory. For example, Plaintiffs quote Rep. Butterfield as saying that "Congress will have to compel you, compel you perhaps with penalties, to make meaningful changes," which Plaintiffs say shows that he was urging YouTube "to censor disfavored speech." Opp. 18. But the underlying transcript reveals that Rep. Butterfield (who spoke *after* YouTube suspended Mr. Trump's account) was not urging YouTube to restrict Plaintiffs' content: he was urging technology executives to agree to publicly report on workplace diversity. *See* Transcript at 87-89 ("Tr."), *available at* https://docs.house.gov/meetings/IF/IF16/20210325/111407/HHRG-117-IF16-Transcript-20210325.pdf. More broadly, Plaintiffs' cherry-picking of statements from what they call "Democrat lawmakers" (AC ¶ 9) ignores the reality that individual members of Congress are on both sides of these issues, some advocating more restriction of content, others advocating less.

LEXIS 64385, at *7-11, *15-20 (N.D. Cal. Mar. 31, 2021), and *Abu-Jamal v. Nat'l Pub. Radio*, 1997 U.S. Dist. LEXIS 13604, at *16-17 (D.D.C. Aug. 21, 1997)). Indeed, even since Defendants' motion was filed, Judge Tigar rejected another very similar First Amendment coercion claim against YouTube, for exactly this reason. *ICAN*, 2022 U.S. Dist. LEXIS 18377, at *22.

Plaintiffs do not offer a single contrary authority. Instead, citing *Lombard v. Louisiana*, 373 U.S. 267 (1963), *United States v. Classic*, 313 U.S. 299 (1941), *Iowa-Des Moines Nat'l Bank v. Bennett*, 284 U.S. 239 (1931), and *Terry v. Adams*, 345 U.S. 461 (1953), Plaintiffs insist that there is no general rule that "'public statements by individual legislators cannot transform private parties into state actors.'" Opp. 18 (quoting MTD 9). But none of those cases involved the allegedly coercive power of ***individual legislators*** or has any bearing on that issue. *Lombard* was a criminal case involving official decrees issued by the Mayor and Chief of Police of New Orleans. *Classic*, *Bennett*, and *Terry* were not about public statements at all; they concerned, respectively, fraud committed by state Election Commissioners, local officials collecting taxes "in the name of and for the State," and a 'whites-only' primary election. That Plaintiffs invoke these cases only underscores the absence of any case supporting their position. *Cf. Tulsi Now, Inc. v. Google, LLC*, 2020 U.S. Dist. LEXIS 41673, at *4-5 (C.D. Cal. Mar. 3, 2020) (rejecting *Terry* as "utterly inapposite" to plaintiff's effort to treat Google as a state actor).

Plaintiffs also suggest that "[i]nformal conduct by state actors can give rise to state action." Opp. 17. But the degree of formality with which an executive official wields power is beside the point. What matters is whether the statements at issue had the force of law or were made on behalf of a federal official who could have credibly threatened to bring the government's coercive power to bear on YouTube if it failed to act. *See Buentello*, 2021 U.S. Dist. LEXIS 117825, at *13. In that regard, individual members of Congress are fundamentally different from prosecutors threatening criminal charges (*see Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291 (9th Cir. 1987)) or public commissions empowered to recommend prosecution of booksellers offering objectionable books (*see Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)). Plaintiffs ignore this basic reality—and with it the profound consequences that would follow if private conduct became state action merely because it coincided with the public statements of individual legislators.

Citing *Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33 (2d Cir. 1983), *Bantam Books*, 372 U.S. 58 (1963), *Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005), and *Zieper v. Metzinger*, 474 F.3d 60 (2d Cir. 2007), Plaintiffs argue that implied threats can establish state action. Opp. 13-14. But these cases involved lawsuits against *government* defendants based on their exercise of *executive* power. And even then (1) the person making the threat had to be acting with the force of law, and (2) what was (impliedly) threatened had to be sufficiently coercive. Neither is true here, as in *Hammerhead*, which found no First Amendment violation where a public official sent a letter urging retailers not to sell a controversial game: "Brezenoff's letter refers to no adverse consequences that might be suffered by stores selling Public Assistance games, nor does the HRA have the power to impose sanctions on merchants who did not respond to Brezenoff's requests." 707 F.2d at 38-40. Indeed, the stark contrast between this case and those Plaintiffs cite only highlights the lack of compulsion. In *Bantam Books*, the State Commission's notifications urging booksellers to stop distributing specific books were backed by threats of criminal prosecution and "invariably followed up by police visitations." 372 U.S. at 68-69. In *Zieper*, the demand came from a federal prosecutor, who sent the FBI and three police officers to the plaintiff's home in an effort to have him remove a particular video from the Internet. 474 F.3d at 66-67. And *Bennett* involved a "prolonged and organized campaign of harassment by local police officers" against supporters of a local ordinance. 423 F.3d at 1254. None of these cases holds that public statements by legislators have the force of law, let alone that acting consistent with such statements makes one a "state actor."

In short, Plaintiffs fail to allege any action by anyone with legal authority over YouTube threatening the company with tangible legal harm. And, as courts have consistently recognized in rejecting virtually identical allegations against YouTube and other private online services, the "threat" to repeal a law—which individual legislators lack the power to do—or to "hold hearings" simply is not enough to transform private choices into state action. MTD 10-11.

**Lack of specificity.** While the Court could stop there, Plaintiffs' coercion theory also fails because none of the alleged statements "commanded a particular result in, or otherwise participated in, [any Plaintiff's] specific case." *Heineke*, 965 F.3d at 1014. The statements never mention YouTube, Mr. Trump's YouTube account, or any of the other Plaintiffs. Above all, none of the

statements remotely suggests that YouTube would face adverse consequences *if it failed to take action against these Plaintiffs*. Am. Compl. ("AC") ¶¶ 63-77; MTD 11 & n.3.

Plaintiffs attempt to dodge this problem by asking the Court to limit *Blum v. Yaretsky*, 457 U.S. 991 (1982) and *Heineke* to their facts. Opp. 11-12. But those cases could not be clearer that government compulsion requires a degree of particularity that is missing here. *Blum*, for example, found no coercion where the state's actions "d[id] not dictate the decision to discharge or transfer in a particular case." 457 U.S. at 1010. Likewise, various courts rejecting claims just like those here have found no coercion where "[n]one of the statements mention Plaintiffs' names, their YouTube or Google accounts, their channels, or their videos." *Doe v. Google LLC*, 2021 U.S. Dist. LEXIS 201377, at *7 (N.D. Cal. Oct. 19, 2021); *accord Daniels*, 2021 U.S. Dist. LEXIS 64385, at *18; *CHD*, 2021 U.S. Dist. LEXIS 121314, at *45 (plaintiff "does not allege that Schiff (or anyone from the government) directed Facebook or Zuckerberg to take any specific action with regard to CHD or its Facebook page"); *ICAN*, 2022 U.S. Dist. LEXIS 18377, at *24 (same).

Trying to avoid this settled law, Plaintiffs turn to criminal cases involving protesters who staged sit-ins at racially segregated restaurants in the Jim Crow South. Opp. 8-11. Plaintiffs assert that the "Supreme Court had no difficulty finding state action in *Robinson*, *Peterson*, and *Lombard* even though the governmental conduct had not targeted any specific individuals by name." *Id*. at 10. But these desegregation cases are totally irrelevant. They involved challenges to criminal convictions—not lawsuits against private parties. And the question they raised was not whether the petitioners' arrests and convictions were state action (they obviously were), but whether their ostensibly race-neutral convictions must be thrown out as violative of the Equal Protection Clause. In finding that the government had required segregation, *Peterson* and *Robinson* pointed to, respectively, a city ordinance and a state health regulation, while *Lombard* was based on official decrees from the Mayor and Chief of Police that the Court understood as equivalent to an ordinance having the force of law. *Peterson v. City of Greenville*, 373 U.S. 244, 248 (1963); *Robinson v. Florida*, 378 U.S. 153, 156-57 (1964); *Lombard*, 373 U.S. at 273-74. These cases say nothing about when private parties can be treated as state actors based on a compulsion theory—much less one based on the statements of individual legislators. And they provide no support for Plaintiffs to keep

their claim alive by evading *Blum, Heineke*, and other recent cases rejecting virtually identical lawsuits where the government did not command a result in a particular plaintiff's case.[2]

**Private party defendant.** Plaintiffs also have no answer to the fact that even if YouTube had been compelled to act, that would not justify a lawsuit against YouTube—and certainly not one designed to undermine its own right to exercise "editorial discretion over the speech and speakers" in its private forum (*Halleck*, 139 S. Ct. at 1930). MTD 11-13. The Ninth Circuit clearly set out that principle in *Carlin* and *Sutton*, holding that "'something more' than state compulsion" is required to hold a private party liable as a state actor. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 838 (9th Cir. 1999). Plaintiffs inexplicably argue that the "something more" is simply compulsion itself (Opp. 18)—exactly the argument that *Sutton* rejected. *See also ICAN*, 2022 U.S. Dist. LEXIS 18377, at *24-25.

But even if Plaintiffs had sued the legislators they say are responsible, their claim would have foundered on the settled rule "that public officials may criticize practices that they would have no constitutional ability to regulate, so long as there is no actual or threatened imposition of government power or sanction." *Am. Fam. Ass'n, Inc. v. City & Cnty. of S.F.*, 277 F.3d 1114, 1125 (9th Cir. 2002) (dismissing First Amendment claim where city resolution condemned plaintiff's television ads and urged broadcasters not to air them). As the Ninth Circuit recently held: "The mere fact that … public officials criticized a billboard or called for its removal, without coercion or threat of government sanction, does not make that billboard's subsequent removal by a private party state action." *Zhou v. Breed*, 2022 U.S. App. LEXIS 1119, at *3 (9th Cir. Jan. 14, 2022)). These cases

---

[2] Plaintiffs get no further by invoking *Mathis v. Pac. Gas & Elec. Co.*, 891 F.2d 1429 (9th Cir. 1989) ("*Mathis I*"), and *United States v. Ross*, 32 F.3d 1411 (9th Cir. 1994). Opp. 11. In *Mathis*, the Ninth Circuit held that state action would only exist if government regulation left "no deference" to the utility company's decision-making. 891 F.2d at 1434. That only highlights the problem here: even if individual legislators expressed a desire to see certain kinds of content removed, the ultimate discretion about whether Plaintiffs' content should be restricted rested solely with YouTube. Moreover, Plaintiffs ignore the Ninth Circuit's later decision in *Mathis II*, which found no state action and expressly rejected the idea that "regulatory interest in a problem transforms any subsequent private efforts to address the problem (even those expressly designed to obviate the need for regulation) into state action." *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 503 (9th Cir. 1996). *Ross* is even further afield: it simply found that because the "government's involvement in promulgating the Federal Aviation Administration guidelines to combat hijacking is so pervasive," airport searches of passengers pursuant to FAA regulations is state action, regardless of who actually opens the luggage. 32 F.3d at 1413-14.

1   confirm that public officials may express their views about what private parties should do about

2   controversial content—even when officials direct their admonitions to specific content and specific

3   private parties—without violating the First Amendment or somehow transforming those private

4   parties into state actors. *Cf. Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff*, 2022 U.S. App.

5   LEXIS 2150 (D.C. Cir. Jan. 25, 2022) (rejecting First Amendment claim against member of

6   Congress for pressuring social media companies to remove vaccine-related misinformation).

7          **B.    Plaintiffs Have Not Plausibly Alleged Joint Action**

8          Plaintiffs' "joint action" theory fares no better. Joint action requires that the private party's

9   "particular actions [be] inextricably intertwined with those of the government." *Pasadena*

10   *Republican Club v. W. Justice Ctr.*, 985 F.3d 1161, 1167-68 (9th Cir. 2021). That means that the

11   *specific challenged actions* must have been made jointly by the government and the private party—

12   not merely that the government supplied a general "rule of decision" or that prior governmental

13   actions "facilitated the [private party's] decision." *Mathis II*, 75 F.3d at 503-04 & n.4; *CHD*, 2021

14   U.S. Dist. LEXIS 121314, at *36-38.

15          Despite the slew of recent cases rejecting nearly identical claims (MTD 13-14)—including

16   two new cases decided since YouTube filed this motion, *ICAN*, 2022 U.S. Dist. LEXIS 18377, at

17   *11-20; *O'Handley*, 2022 U.S. Dist. LEXIS 4491, at *24—Plaintiffs attempt to lower the bar,

18   claiming that joint action requires only "an 'agreement' or 'understanding' … to accomplish a

19   common objective." Opp. 22. That is simply wrong: for an alleged conspiracy to create joint action,

20   the "private and government actors must have actually agreed to 'violate constitutional rights.'"

21   *O'Handley*, 2022 U.S. Dist. LEXIS 4491, at *24 (quoting *Fonda v. Gray*, 707 F.2d 435, 438 (9th

22   Cir. 1983)); *id*. at *33-34 ("a meeting of the minds to promptly address election misinformation" is

23   not "a meeting of the minds to violate constitutional rights, let alone [plaintiff's] constitutional

24   rights"). Plaintiffs' cases do not support their effort to dilute the standard. *Tsao v. Desert Palace,*

25   *Inc.*, 698 F.3d 1128 (9th Cir. 2012), involved far more than a generic agreement: the defendant was

26   a state actor because of "its system of cooperation and interdependence" with the police, such as its

27

28

"security personnel hav[ing] the authority, normally reserved to the state, to issue a citation to appear in court for the crime of misdemeanor trespassing." *Id.* at 1140.[3] Nothing like that is alleged here.

Plaintiffs' joint action argument instead is a grab bag of unsupported allegations that YouTube's policies were informed by various sources: the CDC, health officials, and individual legislators making speeches. Opp. 22; AC ¶¶ 110-56. But a "bare allegation … is insufficient to establish joint action." *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008); *accord O'Handley*, 2022 U.S. Dist. LEXIS 4491, at *24; *CHD*, 2021 U.S. Dist. LEXIS 121314, at *39. And Plaintiffs do not even try to allege an unlawful conspiracy between YouTube and government officials to violate Plaintiffs' rights, much less that "government officials were in the room or somehow directly involved in the decision to suspend Plaintiffs" or remove their content. *Doe*, 2021 U.S. Dist. LEXIS 201377, at *16. Instead, the allegations here reflect, at most, the kind of "public statements indicating [an] intent to work with Congress" and "statements by members of Congress urging Defendants to take action," that courts have repeatedly held are not "sufficient to show that the Government was a 'joint participant in the challenged activity.'" *ICAN*, 2022 U.S. Dist. LEXIS 18377, at *11-14 (quoting *Tsao*, 698 F.3d at 1140); *accord CHD*, 2021 U.S. Dist. LEXIS 121314, at *31-32; *O'Handley*, 2022 U.S. Dist. LEXIS 4491, at *27-32 (no joint action where plaintiff did not allege "that the government played any role in Twitter's internal decisions to . . . suspend [plaintiff]'s account") (quoting *Mathis II*, 75 F.3d at 504). As Judge Tigar recently explained: "By adopting a public health framework to guide decisions about content moderation, [YouTube] by definition maintained 'independent professional judgment' to make decisions about the content on [its] platform[]," which "defeat[s] the 'requisite nexus to the government' to establish joint action." *ICAN*, 2022 U.S. Dist. LEXIS 18377, at *19-20 (quoting *Mathis I*, 891 F.2d at 1432).

---

[3] *See also Collins v. Womancare,* 878 F.2d 1145, 1155 (9th Cir. 1989) (no joint action where defendants conferred with local police related to citizens' arrest); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157-59 (1970) (denying summary judgment in desegregation case based on uncertainty about whether "there was a policeman in the Kress store while petitioner was awaiting service, and [whether] this policeman reached an understanding with some Kress employee that petitioner not be served"); *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1302-03 (9th Cir. 1999) (discussing claims of conspiracy between police and the FBI that included closely cooperating in investigation jointly contributing misinformation to search warrant affidavit).

Finally, Plaintiffs have no answer to the serious problems that would be created by subjecting private action to constitutional scrutiny—especially in the context of health-related misinformation—merely because it seeks to align itself with policy recommendations made by government officials. MTD 14. Such private choices have never been considered state action, and this "theory would be especially problematic in the speech context, because it could eviscerate certain private entities' rights to exercise editorial control over speech and speakers on their properties or platforms." *Halleck*, 139 S. Ct. at 1932.

## C.      Section 230 Does Not Turn YouTube Into A State Actor

As YouTube has explained, numerous courts—including the Ninth Circuit—have squarely rejected the theory that Section 230 transforms a private service's content-moderation decisions into state action. MTD 14-15 (citing *Atkinson*, 2021 U.S. App. LEXIS 34632, at *3; *Divino Grp. LLC v. Google LLC*, 2021 U.S. Dist. LEXIS 3245, at *16-22 (N.D. Cal. Jan. 6, 2021); *Newman v. Google LLC*, 2021 U.S. Dist. LEXIS 119101, at *28-30 (N.D. Cal. June 25, 2021); *CHD*, 2021 U.S. Dist. LEXIS 121314, at *39-43). Plaintiffs largely ignore these cases (Opp. 19-22), which make clear that "the federal government does not encourage, endorse, and participate in the challenged editorial decisions of Defendants through Section 230." *Newman*, 2021 U.S. Dist. LEXIS 119101, at *30.[4]

According to Plaintiffs, "the state 'acts' not only when it coerces, but also when it permits." Opp. 19-20. But that view runs headlong into binding precedent: "Conduct 'by private entities with the mere approval or acquiescence of the State is not state action.'" *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 842-43 (9th Cir. 2017) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999)); *id.* at 844 ("[P]ermission of private choice cannot support a finding of state action.") (quoting *Sullivan*, 526 U.S. at 54). Unsurprisingly, Plaintiffs' cases are not to the contrary. *Reitman v. Mulkey*, 387 U.S. 369 (1967), involved a state effort "to create a constitutional right to

---

[4] Plaintiffs offer the (unpleaded) nonsequitur that "Defendant Pichai has admitted that YouTube's censorship 'is possible only because of . . . Section 230.'" Opp. 18. While irrelevant, *see Prager Univ. v. Google LLC*, 951 F.3d 991, 999 (9th Cir. 2020), this also blatantly mischaracterizes Mr. Pichai's statement: "Our ability to provide a range of information and viewpoints, while also being able to remove this information, is possible only because of legal frameworks like Section 230." Tr. at 35:775-77, 780-83, *available at* https://docs.house.gov/meetings/IF/IF16/20210325/111407/HHRG-117-IF16-Transcript-20210325.pdf.

discriminate on racial grounds in the sale and leasing of real property," which was specifically intended to "encourage and significantly involve the State in private racial discrimination contrary to the Fourteenth Amendment." *Id.* at 376. In invaliding this provision, the Court emphasized that the "right to discriminate, including the right to discriminate on racial grounds, was now embodied in the State's basic charter, immune from legislative, executive, or judicial regulation at any level of the state government." *Id.* at 377. *Reitman*, which predates the Supreme Court's modern state action cases, does not suggest that ordinary statutes that protect private conduct create any constitutional issue. *See Associated Gen. Contractors v. S.F. Unified Sch. Dist.*, 616 F.2d 1381, 1389 n.11 (9th Cir. 1980) (explaining that *Reitman* was "concerned that antidiscrimination statutes were being supplanted by pro-discrimination constitutional provisions, which expressed the basic policy of the state and could not be repealed as easily as statutes could"). That is all the more true for a statute like Section 230, which is expressly intended to "keep the federal government ***removed*** from the editorial decision-making process of internet companies like YouTube." *Newman*, 2021 U.S. Dist. LEXIS 119101, at *30 (emphasis added). And, as both YouTube and the United States have explained, *Hanson* and *Skinner* are readily distinguishable. *See* MTD 15-16; Mem. of Law by Intervenor United States 10 (Dkt. 132). Plaintiffs disregard both the nature of the regulations in *Skinner* (which, among other things, *required* railroads to share test results with the government) and the uniform case law rejecting the facile comparison of those regulations to Section 230. *Id.*

Nor can Plaintiffs evade *Roberts*, which held that the Federal Arbitration Act did not make AT&T into a state actor even though the FAA could "in some sense be seen as encouraging AT&T to arbitrate." 877 F.3d at 844-45. Without explanation, Plaintiffs insist that "Section 230 does far more" than the FAA (Opp. 22). But like the FAA, which "preempt[ed] state law deeming AT&T's arbitration provision to be unconscionable," Section 230 "could also be seen as state inaction—the government's decision not to interfere with private parties' choices" to regulate content on their platforms. *Roberts*, 877 F.3d at 836, 845 ("[O]ur cases will not tolerate the imposition of [constitutional] restraints on private action by the simple device of characterizing the State's inaction as 'authorization' or 'encouragement.'") (quoting *Sullivan*, 526 U.S. at 54). And like the FAA,

Section 230 "has no provision even resembling the sort of coercive regulations that met the encouragement test in *Skinner*." *Id*.

More fundamentally, Plaintiffs cannot answer *Roberts*' teaching that "private parties [do not] face constitutional litigation whenever they seek to rely on some [statute] governing their interactions with the community surrounding them." *Id.* at 845. That rule applies particularly to Section 230, which "does not ban or restrict any speech" (*Lewis v. Google LLC*, 461 F. Supp. 3d 938, 952-53 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021)) and "reflects a deliberate *absence* of government involvement in regulating online speech" (*Divino*, 2021 U.S. Dist. LEXIS 3245, at *17). Indeed, a state-action rule under which a law designed to *protect* private editorial choices had the effect of *prohibiting* those choices would turn the First Amendment on its head.

## II.   PLAINTIFFS CANNOT SAVE THEIR DECLARATORY JUDGMENT CLAIM

In defending their attack on Section 230 as a violation of their First Amendment rights, Plaintiffs ignore that this claim requires state action by YouTube, which cannot be avoided by framing this as a "direct challenge" to a federal statute. MTD 18. Nor do they dispute that because a declaratory judgment is discretionary, this Court can (and should) rule on the other grounds before weighing this challenge. Instead, Plaintiffs suggest that "[a]s applied, Section 230 would deprive Plaintiffs their right to access the courts." Opp. 24. But even apart from being unpleaded, this theory fails as a matter of law. As the Second Circuit explained in rejecting a nearly identical argument, the "right to petition exists in the presence of an underlying cause of action and is not violated by a statute that provides a complete defense to a cause of action or curtails a category of causes of action." *City of N.Y. v. Beretta USA Corp.*, 524 F.3d 384, 397-98 (2d Cir. 2008); *accord Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009) (rejecting due process challenge to immunity statute and explaining that "the State remains free to create substantive defenses or immunities for use in adjudication") (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432 (1982)).

Nor can Plaintiffs evade the Ninth Circuit's conclusion in *Lewis* that a similarly situated user lacked standing to assert a declaratory judgment challenge to Section 230 where YouTube removed the user's content and (successfully) invoked the immunity as a defense. Plaintiffs inexplicably rely on the *Lewis* district court opinion, which both held that the plaintiff lacked standing and found that

the constitutional challenge failed on the merits. *Lewis*, 461 F. Supp. 3d at 952-53. In affirming that ruling, the Ninth Circuit focused on standing, explaining that the plaintiff's injuries "arose from the actions of YouTube, a private entity, as it enforced its own standards" and were not "fairly traceable" to Section 230. 851 F. App'x at 723-34. This case is no different.

Plaintiffs also suggest that they are injured by the existence of Section 230 because the government "wields" the potential repeal of the law as a "cudgel" against YouTube. Opp. 25. But this just repeats the baseless coercion argument discussed above; it in no way explains how Section 230 itself violates Plaintiffs' rights. Finally, Plaintiffs try to defer adjudication of this challenge for a more "[]developed record," (Opp. 24), but they do not explain what facts could be developed that would make any difference. There is no reason for this Court not to dismiss this misguided claim now—as every other court presented with it has done (MTD 18).

## III. PLAINTIFFS CANNOT SAVE THEIR FDUTPA CLAIM

### A. Plaintiffs Cannot Overcome The Choice-of-Law Provision

Plaintiffs do not dispute that they are bound by the choice-of-law provision in YouTube's TOS or that their claim under FDUTPA is covered by that provision. Their sole argument is that enforcing the provision would supposedly violate a fundamental public policy of Florida because California's UCL would require them to show a "los[s] [of] money or property." Opp. 25-26 (quoting Cal. Bus. & Prof. Code § 17204). This argument should be rejected.

Courts routinely apply choice-of-law provisions to dismiss FDUTPA claims, including when enforcing contractual provisions adopting California law, without finding any conflict with public policy. MTD 19; *accord Gaby's Bags, LLC v. Mercari, Inc.*, 2020 U.S. Dist. LEXIS 57440, at *4-6 (N.D. Cal. Mar. 31, 2020); *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 935 (N.D. Cal. 2018). Plaintiffs cite no case that has ever done otherwise. *In re Facebook Biometric Info. Privacy Litig.*, did not involve a generic consumer protection law like FDUTPA; it involved a specific biometric-data-privacy law that the court found had "no law or policy equivalent" in California. 185 F. Supp. 3d 1155, 1169 (N.D. Cal. 2016).

Here, California and Florida have comparable laws; the UCL merely imposes a threshold standing requirement that FDUTPA does not. But it is well settled that such "[d]ifferences in the

particulars of the consumer statutes are not enough … and do not represent a fundamentally different policy." *Williams v. Facebook, Inc.,* 384 F. Supp. 3d 1043, 1056 (N.D. Cal. 2018) (applying choice-of-law provision even though New York law provided a "unique remedy" that "California consumer law lacks"); *Palomino v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS 2971, at *9-13 (N.D. Cal. Jan. 9, 2017) ("different rights and remedies" not enough to trigger public policy exception). Plaintiffs point to no authority suggesting that the lack of an economic injury requirement for FDUTPA claims reflects any fundamental public policy, much less that it would be enough to overcome a choice-of-law provision. *See Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1112 (N.D. Cal. 2016) ("Plaintiff has not cited any case in which a California court refused to apply California law pursuant to a valid contractual choice of law provision because California law offered fewer protections than another state's law.").

In a last-ditch effort, Plaintiffs assert in conclusory fashion that they "have pleaded a UCL claim for injunctive relief for deceptive omission." Opp. 26 n.18. That is simply not true, and the Court cannot convert Plaintiffs' FDUTPA claim into a UCL claim on the fly, especially because they do not even try to allege that they "lost money or property as a result of" any UCL violation. Cal. Bus. & Prof. Code § 17204.[5] The choice-of-law provision dooms Plaintiffs' FDUTPA claim, and it does not merit a second life under the UCL.

## B.    Plaintiffs Have No Viable FDUTPA Claim

In defending their FDUTPA claim, Plaintiffs ignore their failure to satisfy Rule 9(b) or to allege a plausible causal connection between the alleged deception and their supposed injuries. MTD 20, 22-23. Instead, effectively abandoning the affirmative misrepresentation theory pleaded in the FAC (Opp. 27 n.20), Plaintiffs now assert that YouTube engaged in a fraudulent *omission* by failing to disclose that it removes politically disfavored content when strong-armed to do so by legislators or other politicians. Opp. 26-27 & n.20. Plaintiffs cannot save their claim with this gambit.

---

[5] Plaintiffs cite *Lavigne v. Herbalife, Ltd.*, 2019 WL 6721619 (C.D. Cal. Oct. 22, 2019), but there the economic injury required by the UCL was apparent from the face of the complaint. Regardless, the court ultimately found that the UCL claim failed to satisfy Rule 9(b)—one of several hurdles that Plaintiffs face here. *Id.* at *11. In no way does this case suggest that Plaintiffs could turn their FDUTPA claim into a viable UCL claim.

*First*, framing the claim this way does not change the fact that the only relief Plaintiffs are seeking under FDUTPA—a sweeping injunction requiring YouTube to restore their accounts and content and to "consistently" apply its content-moderation standards under a monitor's supervision (AC ¶ 282)—is patently unconstitutional. MTD 20, 24-29, 34-35.

*Second*, Plaintiffs cite no FDUTPA case supporting the free-floating omissions claim they now advance,[6] and it is not cognizable under Florida law. *See In re NJOY, Inc. Consumer Class Action Litig.*, 2015 WL 12732461, at *14 (C.D. Cal. May 27, 2015) ("Where an FDUTPA claim is based on an omission, and the defendant had no duty to disclose the purportedly withheld information, the claim fails as a matter of law.") (citing *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 (11th Cir. 2012)). Indeed, the Eleventh Circuit recently rejected a virtually identical FDUTPA claim in *DJ Lincoln Enters., Inc. v. Google LLC*, 2022 U.S. App. LEXIS 2051, at *7-10 (11th Cir. Jan. 24, 2022). *Lincoln* affirmed dismissal of claims premised on the allegation that Google failed to disclose its supposed policy of "censor[ing] and suppress[ing]" the search ranking of websites operated by political conservatives. *Id*. at *10. The court explained that because the plaintiff's allegation "depends in part on omissions rather than affirmative misrepresentations," there had to be "a duty to disclose." *Id*. at *9-10. "Florida law, however, imposes a duty to disclose only in specific circumstances." *Id*. at *10 (citing *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879-80 (Fla. Dist. Ct. App. 2000) ("Such duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them.") (cleaned up)). "Lincoln fails to allege any such relationship here, and thus Google had no duty to disclose." *Id*. The same is true here.

*Third*, basing their claim on omissions does not allow Plaintiffs to evade the other problems YouTube identified in its opening brief. Rule 9(b) still applies (*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009)), but Plaintiffs clearly do not meet that standard. MTD 20. They also still lack any reasonable likelihood of consumer deception—especially given YouTube's clear

---

[6] Plaintiffs rely on *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164 (Fla. Dist. Ct. App. 2015), but that case did not involve an omission claim at all. And the court certainly did not address whether or when an alleged omission can support a FDUTPA claim; it focused instead on the unrelated issue of whether an individual or business must be a "consumer" to sue under FDUTPA. *Id*. at 167-70.

1    disclosure that it may remove content (including content that "may cause harm to YouTube") and

2    suspend accounts at its "discretion." MTD 20-22; *see also Piescik v. CVS Pharmacy, Inc.*, 2021 U.S.

3    Dist. LEXIS 239982, at *12-15 (S.D. Fla. Dec. 15, 2021) (explaining that "[t]he presence of true

4    information or a disclaimer can rebut a claim of deception" and "can contribute to the implausibility

5    that reasonable consumers would be deceived by some other information or assumption"). And, as

6    in *Newman*, 2021 U.S. Dist. LEXIS 119101, at *35-39, which Plaintiffs ignore, the alleged injuries

7    here come not from any supposed omission but from YouTube's actual moderation choices (that is,

8    the removal of Plaintiffs' content). AC ¶ 281.

9        Beyond all that, Plaintiffs' theory that YouTube concealed that its moderation decisions

10   were done "to placate government officials" (Opp. 26-27) suffers from the same problem discussed

11   above: it is not plausible or supported by concrete factual allegations. *Cf. Schiff*, 2022 U.S. App.

12   LEXIS 2150, at *11-14 ("[I]t is far less plausible that the companies' actions were a response to one

13   legislator's inquiry than that they were a response to widespread societal concerns about online

14   misinformation."). Instead, Plaintiffs' gripe about perceived "political favoritism" (Opp. 27 n.20) is

15   nothing more than a disagreement with YouTube's discretionary decisions about how to apply its

16   content standards. But that disagreement does not remotely suggest that YouTube engaged in

17   deceptive conduct. Making editorial choices that Plaintiffs do not like cannot support a viable

18   FDUTPA claim, much less warrant a court order overriding those choices.

19   **IV.    PLAINTIFFS CANNOT SAVE THEIR SSMCA CLAIM**

20       **A.    Plaintiffs Lack Standing To Sue Based On Alleged Harm To Others**

21       Plaintiffs do not dispute that non-Florida residents cannot sue under the SSMCA or that the

22   statute does not apply to moderation decisions made before July 1, 2021. MTD 24-25. Nor does the

23   Opposition point to any actions that YouTube took in regard to their content after the law's effective

24   date. Instead, Plaintiffs argue that their claims are based on Defendants' supposed "failure to

25   consistently apply their standards after the statute's effective date" *not to Plaintiffs themselves*, but

26   to other (unidentified) users who are not parties to this case. Opp. 27-28. Plaintiffs go so far as to

27   assert—with no support—that a "plaintiff under the SSMCA needs only to be a user of the service,

28   not the party affected by the inconsistent treatment." *Id*. at 27.

1   Nothing in the SSMCA purports to give users a private right of action to sue based on

2   moderation decisions taken against third parties. In addition to exacerbating the constitutional

3   problems discussed below, that would be a highly implausible reading of the statute, especially

4   given that Florida law imposes essentially the same standing requirements that apply in federal

5   court. *State v. J.P.*, 907 So. 2d 1101, 1113 n.4 (Fla. 2004). Those requirements prohibit plaintiffs

6   from pursuing claims based on supposed injuries inflicted on third parties. "Article III grants federal

7   courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold

8   defendants accountable for legal infractions." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205

9   (2021). "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation

10  may sue that private defendant over that violation in federal court." *Id.*; *accord Spokeo, Inc. v.*

11  *Robins*, 578 U.S. 330, 339 (2016) (standing requires "particularized" injury, which "must affect the

12  plaintiff in a personal and individual way"). Plaintiffs have conceded that they do not meet that

13  standard. Whether under Florida law or Article III itself, that requires dismissal of their SSMCA

14  claim. *See TransUnion*, 141 S. Ct. at 2208 ("[P]laintiffs must demonstrate standing for each claim

15  that they press and for each form of relief that they seek.").

16  **B.      The SSMCA Is Unconstitutional**

17  Plaintiffs also fail in their attempt to defend the constitutionality of the SSMCA.

18  ***First Amendment.*** Plaintiffs try to dodge the First Amendment in three ways, but none

19  works. *First*, they argue that the SSMCA "does not impose any requirement regarding the content

20  Defendants may 'moderate'; it merely requires disclosure and consistency if they do so." Opp. 28.

21  But even if that were an accurate description of the SSMCA (which it is not), it would describe the

22  First Amendment problem, not solve it. To require "consistency" across moderation decisions is to

23  tell service providers how they can moderate content and what content they may or may not

24  moderate. *See NetChoice, LLC v. Moody*, 2021 U.S. Dist. LEXIS 121951, at *26-29 (N.D. Fla. June

25  30, 2021) (the SSMCA "targets … editorial judgements themselves"). This lawsuit proves the point:

26  Plaintiffs seek to use the SSMCA to hold YouTube liable for making editorial judgments that they

27  say are inconsistent or unfair. AC ¶¶ 286-87, 294-96. The First Amendment forbids that result. MTD

28  25-29; *accord O'Handley*, 2022 U.S. Dist. LEXIS 4491, at *39-45 ("Twitter has important First

Amendment rights that would be jeopardized by a Court order telling Twitter what content-moderation policies to adopt and how to enforce those policies.").[7]

*Second*, Plaintiffs contend that the First Amendment right to editorial judgment does not apply to YouTube because it is not a newspaper. Opp. 28. But, as explained in YouTube's opening brief, these principles are in no way limited to newspapers or traditional publishers. MTD 25-26. In a recent case, Judge Breyer confirmed as much: "Like a newspaper or a news network, Twitter makes decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First Amendment." *O'Handley*, 2022 U.S. Dist. LEXIS 4491, at *41. Judge Breyer also rejected Plaintiffs' reliance on *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47 (2006) ("*FAIR*"), explaining that unlike law schools' decisions about which employers can recruit on campus, "Twitter's decisions to include, exclude, or label a tweet on a site that is entirely a 'discussion of issues' are expressive." *O'Handley*, 2022 U.S. Dist. LEXIS 4491, at *43; *accord NetChoice, LLC v. Paxton*, 2021 U.S. Dist. LEXIS 233460, at *32 n.4 (W.D. Tex. Dec. 1, 2021) (distinguishing *FAIR* and *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74 (1980)); *Moody*, 2021 U.S. Dist. LEXIS 121951, at *22-29 (same).[8] Nor does this rule turn on space limitations or the cost of publishing articles, as Plaintiffs suggest. *Tornillo* made this clear: "Even if a newspaper would face no additional costs to comply with a compulsory access law and would not be forced to forgo publication of news or opinion by the inclusion of a reply, the Florida

---

[7] Plaintiffs' suggestion that the SSMCA's disclosure obligations are constitutional under *Zauderer v. Office of Disciplinary Counsel of the Sup. Ct. of Ohio*, 471 U.S. 626, 650-651 (1985) is both irrelevant and wrong. Irrelevant because Plaintiffs are not suing for any alleged violation of the SSMCA's disclosure provisions. Wrong because *Zauderer*—which applies only to "laws that require professionals to disclose factual, noncontroversial information in their 'commercial speech'" and that are not "unduly burdensome" (*Nat'l Inst. of Family & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2372 (2018))—has no application to a law that imposes onerous burdens on non-commercial speech. *See Moody*, 2021 U.S. Dist. LEXIS 121951, at *34 ("[S]ome of the disclosure provisions seem designed not to achieve any governmental interest but to impose the maximum available burden on the social media platforms.").

[8] Plaintiffs rely on *Moody's* dicta that social media platforms are not exactly like newspapers (Opp. 28-29), ignoring the court's observation that YouTube and other social media platform "use editorial judgment in making [content-moderation] decisions, much as more traditional media providers use editorial judgment when choosing what to put in or leave out of a publication or broadcast"—to say nothing of *Moody's* holding that the entire SSMCA violated the First Amendment. 2021 U.S. Dist. LEXIS 121951, at *21.

statute fails to clear the barriers of the First Amendment because of its intrusion into the function of editors." *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). That is the same intrusion caused by the SSMCA: if a given set of moderation decisions are deemed "inconsistent" (whatever that means), the law makes that unlawful and overrides the editorial judgments that the material at issue should or should not be published. That is a blatant First Amendment violation.

*Third*, Plaintiffs try to characterize services like YouTube as common carriers ineligible for First Amendment protection. But "social media platforms are not common carriers." *Paxton*, 2021 U.S. Dist. LEXIS 233460, at *25-29; *accord Moody*, 2021 U.S. Dist. LEXIS 121951, at *23 (same); *U.S. Telecom Ass'n v. FCC*, 855 F.3d 381, 392 (D.C. Cir. 2017) (Srinivasan, J., concurring in denial of rehearing en banc) ("[W]eb platforms such as Facebook, Google, Twitter, and YouTube … are not considered common carriers that hold themselves out as affording neutral, indiscriminate access to their platform without any editorial filtering."). "A common carrier does not 'make individualized decisions, in particular cases, whether and on what terms to deal.'" *FCC v. Midwest Video Corp.*, 440 U.S. 689, 701 (1979). But this very case is about YouTube's discretionary, individualized decisions to remove certain content and to deny access to certain users—behavior that is diametrically opposed to a take-all-comers approach. In any event, simply labeling an entity a common carrier does not strip it of its First Amendment rights. *See Denver Area Educ. Telecomms. Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 825 (1996) (Thomas, J., concurring in part and dissenting in part) ("Labeling leased access a common carrier scheme has no real First Amendment consequences.").

*Vagueness*. Plaintiffs have no answer to the argument that the SSMCA's requirement to moderate content "in a consistent manner" is wholly undefined and so vague as to violate due process. MTD 29-30. They say nothing about how the statute affords "a person of ordinary intelligence fair notice of what is prohibited." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Instead, they point out that the SSMCA is housed within FDUTPA, which is in turn based on the Federal Trade Commission Act, and that the FTCA's prohibition on "unfair" conduct has survived constitutional scrutiny. Opp. 29-30. But "unfairness" under the FTCA has no bearing on the meaning of the SSMCA's new consistency mandate and supplies it with no understandable meaning that makes it a permissibly definite speech regulation.

***Commerce Clause.*** Ignoring the on-point authority cited in YouTube's opening brief (at 30-31), Plaintiffs claim that the SSMCA simply regulates how YouTube should act "within" Florida. Opp. 25. But the law is not limited to YouTube's actions in that state: the only tie to Florida is the definition of "users" as Florida residents. The statute's consistency mandate applies regardless of where any given user is posting or viewing content, and thus effectively sets a nationwide restriction on how YouTube moderates content—as Plaintiffs' own allegations in this case illustrate. The Ninth Circuit has squarely held that such extraterritorial regulation, limited only by a residency requirement, violates the Commerce Clause. *See Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323-25 (9th Cir. 2015) (en banc).[9]

## V.   SECTION 230 BARS PLAINTIFFS' STATE LAW CLAIMS

In addition to failing on their own terms, Plaintiffs' state law claims are also barred by Section 230(c)(1) because they seek to hold YouTube liable for its decisions about whether to publish third-party content. MTD 31-32. Plaintiffs do not challenge this established application of Section 230. Instead, they deny reality, arguing that their claims do not involve reviewing, editing, and deciding whether to publish content. Opp. 30-31. But, as Plaintiffs' own allegations make clear, the essence of their state law claims is to hold YouTube liable for its decisions to stop publishing Plaintiffs' content while continuing to publish other users' content. AC ¶ 271 (alleging "a subjective pattern of discriminating against disfavored parties"); ¶ 287 (alleging that Plaintiffs' content has "been removed from the platform, while other content … is allowed to remain"). That is why the relief Plaintiffs seek for these claims is an order allowing them "return to the platform" and "to resume posting content to the Defendants' platform." *Id.* ¶¶ 282, 301. If such claims do not seek to "prescribe what content should or should not appear on the platform" (Opp. 30), nothing does.

But even if all Plaintiffs were trying to do was to hold YouTube liable for (supposedly) not consistently applying its own standards, that claim still would be barred. *See Moody,* 2021 U.S. Dist.

---

[9] Plaintiffs also assert that "any constitutional infirmity in other provisions is immaterial as the SSMCA contains a severability clause." Opp. 30. This is a non sequitur: the constitutional problems raised here apply squarely to the "consistency" requirement that underlies Plaintiffs' SSMCA claim. MTD 25-31. And of course, *Moody* found the entire SSMCA unconstitutional: there was "nothing that could be severed and survive." 2021 U.S. Dist. LEXIS 121951, at *33.

LEXIS 121951, at *20 ("Claims based on alleged inconsistency of a platform's removal of some posts but not others are preempted."); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 29 (2021) (Section 230(c)(1) barred claims accusing Twitter of "unfairly applying its general rules regarding what content it will publish"). The same is true of a claim asserting that YouTube failed to disclose its content standards. While this is not what Plaintiffs' FDUTPA claim does (*see supra* § III.B), such a claim would still target publishing: after all, Plaintiffs were not harmed by YouTube's purported omission; the injury they assert is YouTube's editorial decision to remove their content. *See, e.g., Murphy,* 60 Cal. App. 5th at 31 (rejecting argument that under Section 230(c)(1) "Twitter can be held liable based on promises and representations in its general terms of service"); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 201-02 (2017) ("[E]ven if statements in Facebook's terms could be construed as obligating Facebook to remove the pages … it would not alter the reality that the source of Knight's alleged injuries, the basis for his claim, is the content of the pages and Facebook's decision not to remove them."). Plaintiffs cannot evade the immunity "through the creative pleading of barred claims." *Murphy*, 60 Cal. App. 5th at 26-27.

## VI.    PLAINTIFFS CANNOT SAVE THEIR CLAIMS AGAINST MR. PICHAI

Plaintiffs seem to concede that their First Amendment claim is not properly brought against Mr. Pichai, as they respond only with respect to his alleged responsibility under FDUTPA. Opp. 31. Even here, however, they do not attempt to meet the standard for vicarious liability. Instead, they claim that the rule is whether the officer "knew or should have known of the act and had the authority to control it." *Id.* (citing *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069 (Fla. Dist. Ct. App. 2008)). As explained above (*supra* § III.A), Florida law does not apply. But Plaintiffs even get *KC Leisure* wrong. That case held that "to proceed against an individual using a FDUTPA violation theory[,] an aggrieved party must allege that the individual was a *direct participant* in the improper dealings." 972 So. 2d at 1074 (emphasis added); *accord State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 446 F. Supp. 3d 1032, 1053 (S.D. Fla. 2020). Plaintiffs make no such allegations here, and their claims against Mr. Pichai must be dismissed.

## CONCLUSION

Plaintiffs' Amended Complaint should be dismissed with prejudice.

1

Dated: February 11, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

2

3

By: */s/ Brian M. Willen*

4

Brian M. Willen
bwillen@wsgr.com

5

Attorneys for Defendants
YOUTUBE, LLC and SUNDAR PICHAI

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28