| | |
|---|---|
| DAVID H. KRAMER, SBN 168452 | BRIAN M. WILLEN (*admitted pro hac*) |
| MENG JIA YANG, SBN 311859 | BENJAMIN D. MARGO (*admitted pro hac*) |
| WILSON SONSINI GOODRICH & ROSATI | WILSON SONSINI GOODRICH & ROSATI |
| Professional Corporation | Professional Corporation |
| 650 Page Mill Road | 1301 Avenue of the Americas, 40th Floor |
| Palo Alto, CA 94304-1050 | New York, NY 10019-6022 |
| Telephone: (650) 493-9300 | Telephone: (212) 999-5800 |
| Facsimile: (650) 565-5100 | Facsimile: (212) 999-5801 |
| Email: dkramer@wsgr.com | Email: bwillen@wsgr.com |
| Email: mjyang@wsgr.com | Email: bmargo@wsgr.com |
| | |
| LAUREN GALLO WHITE, SBN 309075 | STEFFEN N. JOHNSON (*admitted pro hac*) |
| AMIT Q. GRESSEL, SBN 307663 | WILSON SONSINI GOODRICH & ROSATI |
| WILSON SONSINI GOODRICH & ROSATI | Professional Corporation |
| Professional Corporation | 1700 K Street NW, Fifth Floor |
| One Market Plaza | Washington, DC 20006-3817 |
| Spear Tower, Suite 3300 | Telephone: (202) 973-8800 |
| San Francisco, CA 94105-1126 | Facsimile: (202) 973-8899 |
| Telephone: (415) 947-2000 | Email: sjohnson@wsgr.com |
| Facsimile: (415) 947-2099 | |
| Email: lwhite@wsgr.com | Attorneys for Defendants |
| Email: agressel@wsgr.com | YOUTUBE, LLC and SUNDAR PICHAI |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DONALD J. TRUMP, KELLY VICTORY, AUSTEN FLETCHER, AMERICAN CONSERVATIVE UNION, ANDREW BAGGIANI, MARYSE VERONICA JEAN-LOUIS, NAOMI WOLF, and FRANK VALENTINE,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and SUNDAR PICHAI,<br><br>Defendants. | CASE NO.: 4:21-cv-08009-JSW<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO THE MOTION AND MEMORANDUM OF LAW BY INTERVENOR UNITED STATES OF AMERICA IN SUPPORT OF THE CONSTITUTIONALITY OF 47 U.S.C. § 230(C)**<br><br>Hon. Jeffrey S. White |

Defendants YouTube, LLC and Sundar Pichai (collectively "YouTube") submit this reply to Plaintiffs' response to the intervention brief filed by the United States. *See* Dkt. 132 ("Intervention Br."); Dkt. 147 ("Resp."). Rather than actually responding to the United States' explanation of why Plaintiffs have no viable constitutional challenge to 47 U.S.C. § 230 ("Section 230"), Plaintiffs veer into a different argument, asserting for the first time that Section 230 should not apply to claims involving "political speech." Plaintiffs' new argument has no basis in the text of the statute and flouts decades of governing case law. Apart from that, Plaintiffs cite, with almost no explanation, a few narrow and readily distinguishable First Amendment cases and refer back to their misguided (and irrelevant) common carrier argument. Plaintiffs' submission does nothing to bolster their attack on Section 230 or help save their claims, which should all be dismissed.

## I. SECTION 230 HAS NO EXCEPTION FOR "POLITICAL SPEECH"

Plaintiffs' response is virtually silent about the fatal defects in their declaratory judgment claim identified by both YouTube and the United States: Plaintiffs' lack of standing; the absence of any relevant state action; and the fact that Section 230 does not itself restrict any speech. Dkt. 129 at 7-17 ("MTD"); Intervention Br. at 8-12. Instead, Plaintiffs mainly argue that Section 230's protections should not apply because their claims are based on what they call "arbitrary discrimination" against "political speech." Resp. 2, 3-4. This argument—which Plaintiffs make for the first time—is frivolous.

While this is not a discrimination case, even if Plaintiffs had tried to assert an actual discrimination claim, that would not change the result under Section 230. As the Ninth Circuit explained in rejecting a similar effort to evade Section 230 by claiming that Facebook "discriminated" against plaintiff by singling out his pages for removal, the court has "never adopted" an "an anti-discrimination rule" to "apply § 230(c)(1) immunity." *Fyk v. Facebook, Inc.*, 808 F. App'x 597, 597-98 (9th Cir. 2020); *accord Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *3-5 (N.D. Cal. May 9, 2019) (dismissing discrimination claims based on Section 230 and citing similar cases).

Likewise, as Judge Koh has explained, "[i]mmunity under . . . Section 230 does not contain a political speech exception." *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107,

1120 (N.D. Cal. 2020). The operative provision of the statute bars treating a service provider "as the publisher or speaker of *any* information provided by another information content provider." 47 U.S.C. § 230(c)(1) (emphasis added). Unsurprisingly, therefore, courts have consistently applied Section 230 to claims involving the publication (and depublication) of political speech without hesitation. *See, e.g., Daniels v. Alphabet Inc.*, 2021 U.S. Dist. LEXIS 64385, at *3-4, *6-7 (N.D. Cal. Mar. 31, 2021) (removal of political and anti-vaccination video commentary); *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 952-53 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) (removal of content allegedly espousing "patriotic American culture and laws"); *Ebeid*, 2019 WL 2059662, at *1-3 (removal of material demanding the recall of the British ambassador to Egypt); *Sikhs for Just. "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015), *aff'd* 697 F. App'x 526 (9th Cir. 2017) (removal of page used to organize political advocacy campaigns); *Klayman v. Zuckerberg*, 753 F.3d 1354 (2014) (removal of pro-Palestinian Facebook page); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 29 (2021) (removal of account discussing gender identity politics).

Ignoring all this, Plaintiffs rely primarily on language in one of the statute's "Findings" that the Internet and other interactive computer services "have flourished to the benefit of all Americans" and "offer a forum for a true diversity of political discourse . . . ." 47 U.S.C. § 230(a)(3)-(4). Resp. 2, 3.[1] Not only are such prefatory findings "insufficient to alter the substance of the phrases they precede," *Gonzalez v. Google*, 2 F.4th 871, 889 (9th Cir. 2021), this language, even taken on its own terms, does not remotely suggest that discrimination claims or political speech are somehow categorically excluded from the protections of Section 230. To the contrary, Section 230 protects the ability of private online services not only to host content, but also to self-regulate, allowing them to make their own decisions, free from the risk of legal liability (outside narrowly drawn express

---

[1] Plaintiffs also cite similar language from *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2019), a case that has nothing to do with Section 230 and that holds that the First Amendment limits *the government's* ability to ban people from social media websites. *Packingham* does not support Plaintiffs' attempt to sidestep the established application of Section 230 to claims like theirs. Nor does it constrict the separate First Amendment rights of private online services to apply and enforce rules for acceptable speech on their platforms.

DEFENDANTS' REPLY TO PLAINTIFFS'  -2-  CASE NO.: 4:21-cv-08009-JSW
RESPONSE TO MEM. OF LAW
BY INTERVENOR USA

statutory exceptions), about what content to present (or not present) to their users. In this way, Section 230 fulfills its "two parallel goals": "to promote the free exchange of information and ideas over the Internet *and* to encourage voluntary monitoring for offensive or obscene material." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099-1100 (9th Cir. 2009) (citation omitted) (emphasis added).

Lacking any actual authority, Plaintiffs invoke Justice Thomas's solo statement regarding the denial of certiorari in a case involving a different provision of Section 230. Resp. at 4 (citing *Malwarebytes, Inc. v. Enigma Software Grp.*, 141 S. Ct. 13 (2020) (Thomas, J., statement regarding denial of certiorari)). A single Justice's observations (offered without the benefit of briefing or argument) provides no basis to ignore the statute's text or upend decades of cases, including multiple Ninth Circuit cases, applying the statute to claims involving political speech and assertions of supposed discrimination. *See, e.g.*, *J.B. v. G6 Hosp., LLC*, 2020 U.S. Dist. LEXIS 232625, at *3-5 (N.D. Cal. Dec. 10, 2020) (rejecting similar reliance on Justice Thomas' statement).

In short, while this Court need not apply Section 230 to resolve YouTube's motion to dismiss, the immunity provides a further independent ground to reject Plaintiff's state law claims.[2]

## II.  PLAINTIFFS CANNOT OVERCOME THEIR STATE ACTION PROBLEM

Equally misguided is Plaintiffs' cursory effort to prop up their constitutional challenge to Section 230. Plaintiffs do not engage with the United States' state-action arguments, including about *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602 (1989) and *Railway Employees' Department v. Hanson*, 351 U.S. 225 (1956), *see* Intervention Br. at 8-11, and they cannot dispute the fundamental rule that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 839-41 (9th Cir. 2017) (citation omitted). That is fatal because here, YouTube is a private party, and its reliance on Section 230 as a litigation defense does not transform it into a state actor or raise any First Amendment

---

[2] Plaintiffs assert that YouTube "[may] not claim immunity under Section 230" insofar as its conduct amounted to a violation under the First Amendment (Resp. at 1), but YouTube has only invoked Section 230 here as a defense against Plaintiffs' state-law claims. Plaintiffs' affirmative First Amendment claim fails for a host of other reasons. *See* MTD at 7-17; Dkt. 143 at 1-11 ("MTD Reply").

issue. MTD at 14-15; MTD Reply at 9-11; *accord Roberts*, 877 F.3d at 845 ("[P]ermission of a private choice cannot support a finding of state action") (citation omitted).

Citing *Denver Area Educational Telecommunications Consortium, Inc. v. FCC,* 518 U.S. 727 (1996), Plaintiffs assert that "statutes that permit but do not require a private party to regulate speech *could* lead to a First Amendment violation." Resp. at 4-5 (emphasis added). This argument is cryptic, but the Supreme Court's decision in *Denver Area* does not support any finding of state action based on YouTube's invocation of Section 230. *Denver Area* was a suit directly against the federal government challenging the constitutionality of a federal statute. It did not address whether a private party is transformed into a state actor when it relies on an immunity as a defense against private civil claims. And the Ninth Circuit has made clear that the "splintered opinion" in *Denver Area* must be understood "very narrowly." *Roberts*, 877 F.3d at 839-41 (rejecting similar effort to rely on *Denver Area* to attack constitutionality of the Federal Arbitration Act based on a private party's reliance on the statute to compel arbitration). Indeed, last year in *Divino Group LLC v. Google LLC*, the court rejected a virtually identical effort to use *Denver Area* to argue that Section 230 transforms YouTube into a state actor: "This argument is not persuasive. As the Ninth Circuit has explained, *Denver Area* does not depart from the Supreme Court's long-standing state action jurisprudence." 2021 WL 51715, at *19-21 (N.D. Cal. Jan. 6, 2021) (distinguishing statute at issue in *Denver Area* from Section 230).

### III. SECTION 230 CONFIRMS THAT YOUTUBE IS NOT A COMMON CARRIER

Finally, although it has no connection to the United States' submission or Plaintiffs' constitutional attack on Section 230, Plaintiffs revive their argument that YouTube is akin to a "common carrier." Resp. at 2.

YouTube has already explained why that argument fails. MTD Reply at 18; *accord Howard v. Am. Online, Inc.*, 208 F.3d 741, 753 (9th Cir. 2000) (holding that "AOL is not a common carrier"). But even beyond that, Plaintiffs' latest argument for common carrier treatment—that YouTube does "not engage in individualized decisions whether and on what terms to deal" (Resp. at 2)—is contrary to their basic theory of the case: that YouTube made an individualized decision to suspend former President Trump's account. And the only new case Plaintiffs cite, *Conservation Force v. Delta Air*

1  *Lines, Inc.*, 190 F. Supp. 3d 606, 610 (N.D. Tex. 2016), only further undermines their argument. That case *rejected* a discrimination claim against an acknowledged common carrier. It says nothing about what makes an entity a common carrier in the first place. The case shows that even "common carriers may refuse to carry certain types of cargo." *Id.* at 609-11. But it does not remotely support Plaintiffs' unprecedented effort to assign common carrier status to an entity that has never operated or been regulated as one.

It is especially ironic for Plaintiffs to make another bid for treating YouTube as a common carrier in the context of arguing about Section 230. Section 230 was expressly intended to "preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, *unfettered by Federal or State regulation*." 42 U.S.C. § 230(b)(2) (emphasis added); *accord Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) ("Section 230 was enacted, in part, to . . . keep government interference in the medium to a minimum."). Section 230 thus cuts even further against any idea that interactive computer service providers like YouTube are common carriers. The statute underscores that such providers are free to moderate content according to their own private editorial and self-regulatory judgments and are not legally required to host users or content they find objectionable. That statutory protection reinforces YouTube's pre-existing First Amendment rights; it does not raise any serious constitutional issue or offer any basis for treating YouTube's private choices as state action.

Respectfully submitted,

Dated:  March 3, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  */s/ Brian M. Willen*
      Brian M. Willen
      bwillen@wsgr.com

*Attorneys for Defendants*
YOUTUBE, LLC AND SUNDAR PICHAI